THE STATE OF OHIO [CITY OF SOUTH EUCLID], APPELLEE, *v.* RICHARDSON, APPELLANT.

(No. 54080 — Decided July 5, 1988.)

*Robert P. DeMarco,* city prosecutor, for appellee.

*Benjamin B. Sheerer* and *Paula Goodwin,* for appellant.

DYKE, J. Around 9:15 p.m. on September 27, 1986, Janet Fletcher was walking approximately ten feet behind Tony Nista on the sidewalk on Maplegrove Road in South Euclid, Ohio. As Fletcher was nearing the appellant Ronnie Richardson's residence, she observed an adult male who was walking toward her. After this person turned into appellant's driveway, Tony Nista turned around and said to Fletcher, "looks like another party night." At that point, the appellant came out of his front door, asked Fletcher if he

could help her, and ordered her off his sidewalk. Nista, who heard this conversation, turned and started walking toward Fletcher. Fletcher refused to get off the sidewalk, and the appellant stated "fuck you" to her. The appellant turned, and as he was walking back into his house he said, "these asshole people."

On October 2, 1986, Janet Fletcher filed a complaint against the appellant which charged him with disturbing the peace in violation of South Euclid Codified Ordinances Section 648.05 (A). On January 13, 1987, the appellant's trial began, and the jury returned a guilty verdict against the appellant on the next day. The appellant now appeals his conviction and assigns five errors to the court:

The appellant's first assignment of error is:

"South Euclid Ordinance 648.05 (A) is unconstitutional as applied to the defendant. This court has repeatedly held that the kind of evidence produced herein cannot sustain convictions."

Appellant argues under this assignment of error that his statements to Fletcher were protected by the First Amendment to the United States Constitution and, therefore, that his conviction of South Euclid Codified Ordinance Section 648.05(A) was unconstitutional.

We addressed this very issue in *Cleveland* v. *Wronko* (May 14, 1987), Cuyahoga App. No. 52132, unreported. In that case, a defendant confronted two policemen and a television reporter who were filming a television news report on the tree lawn of the defendant's residence. After one of the officers had refused to tell his badge number to the defendant, the defendant stated, "[y]ou motherfuckers think you can do whatever you want." At another point, the defendant said to the television reporter, "[w]hat the hell are you doing on my property Bitch?"

Ultimately, the defendant was placed under arrest after he stated, "[f]uck you."

At trial all four of the city's witnesses testified that though they were offended by the defendant's comments, those statements did not result in a violent response by any of them.

In holding that the defendant's conviction violated his First Amendment right to freedom of expression, we analyzed the issue of when a person may be held criminally culpable for his spoken words:

"* * * The Ohio Supreme Court has held that the constitutionality of statutes and ordinances, such as the one at issue here, must be authoritatively construed in light of the facts and the circumstances surrounding a case involving speech. *State* v. *Hoffman* (1979), 57 Ohio St. 2d 129. Persons may not be punished for speaking boisterous, rude or insulting words, even with the intent to annoy another, unless the words by their very utterance inflict injury or are likely to provoke the average person to an immediate retaliatory breach. *City of Cincinnati* v. *Karlan* (1974), 39 Ohio St. 2d 107. This Court recently held that in order to support a conviction for disorderly conduct under R.C. 2917.11, a statute similar to the ordinance here, the words spoken must be equivalent of 'fighting words' i.e. words that are likely, by their very utterance, to inflict injury or provoke the average person to an immediate breach of the peace. *State* v. *Wylie* (1984), 19 Ohio App. 3d 180.

"We find merit in this assignment. At best the State's witnesses testified they were annoyed, irritated or offended by the appellant's behavior. At no time did they testify they were afraid that at any moment the situation would become violent. This Court has held consistently that something more than insulting language or a per-

sistent, belligerent manner is required to sustain a conviction for disorderly conduct. See *State* v. *Schiesswohl* (June 3, 1982), Cuyahoga App. No. 44196, unreported; *State* v. *Pilkington* (Feb. 12, 1981), Cuyahoga App. Nos. 42513-4, unreported. See, also, *State* v. *Wylie, supra; Kent* v. *Kelley* (1975), 44 Ohio St. 2d 43.

"Re-echoing the words of *Wylie, supra,* while we do not condone the use of profanity or disrespect toward police officers, we cannot find the words used by appellant would cause the average person to breach the peace in view of the decisions on similar language. We find that the ordinance as applied here unconstitutionally abridged the appellant's first amendment freedom of expression. * * *" *Wronko, supra,* at 13-14.

In the instant case, though Fletcher testified that she was hurt, upset, mad, and insulted by the appellant's language, she did not respond to these remarks in any manner. Further, there is no evidence in the record that any of the other witnesses to the appellant's remarks responded to those remarks. In light of these facts and the decisions in similar cases, we cannot find that the words used by the appellant would have caused the average person to breach the peace. See *Wronko, supra; State* v. *Wylie* (1984), 19 Ohio App. 3d 180, 19 OBR 287, 482 N.E. 2d 1300 (defendant's statement, "give me that god damn bag you fucking bitch," was constitutionally protected); *State* v. *Schiesswohl* (June 3, 1982), Cuyahoga App. No. 44196, unreported (a defendant's calling a policeman an "asshole" was not likely to provoke a violent response). Accordingly, the appellant's statements were protected by the First Amendment to the United States Constitution, and his conviction for the violation of South Euclid Codified Ordinances Section 648.05(A) was unconstitutional. Appellant's first assignment of error is well-taken.

Appellant's second and third assignments of errors raise similar issues and will be discussed together. These assignments of error are:

"South Euclid Ordinance 648.05 (A) is unconstitutionally overbroad as applied herein in that it proscribes behavior protected by the First and Fourteenth Amendments to the United States Constitution.

"South Euclid Ordinance 648.05 (A) as construed and applied in this case is void for vagueness. Mr. Richardson's conviction is therefore unconstitutional and must be reversed."

Under both of these assignments of error, the appellant challenges the constitutional validity of South Euclid Codified Ordinances Section 648.05 (A). However, it is well-settled in Ohio that "[a] court will not exercise its power to determine the constitutionality of a legislative enactment where other issues are apparent in the record, the determination of which will dispose of the case on its merits." *Greenhills Home Owners Corp.* v. *Greenhills* (1966), 5 Ohio St. 2d 207, 34 O.O. 2d 420, 215 N.E. 2d 403, paragraph one of the syllabus. Since we have already determined that the appellant's conviction may not stand, we decline to address the merits of these two assignments of error. Accordingly, the appellant's second and third assignments of error are overruled.

Appellant's fourth assignment of error is:

"The trial judge failed to adequately instruct the jury as to the requirements of 'fighting words.' Mr. Richardson is entitled to a complete and correct statement of the law and the constitutional issues involved herein."

At trial, the appellant filed a written request for the court to give the jury specific instructions in regard to whether the appellant's statements constituted fighting words. The court

refused to charge the jury as the appellant requested, and the appellant now argues that the court erred in failing to give these instructions.

In his written request, the appellant asked that the following instructions be given to the jury:

"DEFENDANT'S REQUESTED INSTRUCTION NO. 1

"I instruct you that no matter how profane, rude, abusive, offensive, derisive, vulgar, insulting, crude or opprobrious the words that the defendant allegedly uttered may seem to be, he may not be found guilty of the crime with which he is charged unless the prosecution has proved beyond a reasonable doubt that the words uttered by the defendant amount to 'fighting words' as I will define that term.

" 'Fighting words' are only those words which by their very utterance inflict injury or are likely to provoke the average person to an immediate retaliatory breach of the peace. *Lewis* v. *New Orleans,* 415 U.S. 130 (1974).

"DEFENDANT'S REQUESTED JURY INSTRUCTION NO. II

"One of the essential elements of the crime charged which the prosecution must prove beyond a reasonable doubt is that the profanities allegedly spoken by the defendant amounted to 'fighting words' as I will define that term.

" 'Fighting words' are only those words which by their very utterance inflict injury or are likely to provoke the average person to an immediate retaliatory breach of the peace.

"Thus, no matter how profane, rude, abusive, offensive, derisive, vulgar, insulting, crude or opprobrious may be the words which you find the defendant to have spoken, you must, nevertheless, find the defendant not guilty unless the prosecution has proven beyond a reasonable doubt that those words amount to 'fighting words' as I have defined that term.

*Lewis* v. *New Orleans,* 415 U.S. 130 (1974)."

Instead of instructing the jury as the appellant requested, the court told the jury that:

"Before you can find the defendant guilty of disturbing the peace you must find beyond a reasonable doubt that those words which were uttered by or spoken by the defendant were likely to provoke an average person to an immediate retaliatory breach of the peace."

We fail to discern any meaningful distinction between the court's instruction on "fighting words" and the appellant's requested instructions on that issue. The rest of the appellant's requested instructions was mere surplusage to the definition of "fighting words." Since the court instructed the jury on all the elements of disorderly conduct, including the fighting-words instruction, its charge to the jury was appropriate. Therefore, the court did not err when it refused to charge the jury as the appellant requested. Appellant's fourth assignment of error is overruled.

Appellant's fifth assignment of error is:

"The court erred in excluding the testimony of the Reverend Ogden White. The bias of a witness may always be proved in criminal prosecutions. It is not collateral. Exclusion of such evidence offends the Sixth Amendment to the United States Constitution."

During the cross-examination of the city's witnesses, it was brought out that prior to the incident on September 27, 1986, all of them had attended a meeting about the appellant and his wife. However, all of these witnesses denied that they had spoken out against the appellant or his wife at this meeting. During his case, the appellant sought to call the Reverend Ogden White to the witness stand for the purpose of impeaching testimony of the

city's witnesses. In response to the city's motion *in limine*, the court refused to allow White to testify for this purpose. The appellant argues under this assignment of error that the court erred in not allowing White to testify, and that the court's ruling denied the appellant his right to confrontation as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

Evid. R. 608(B) provides:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

White's testimony would have detailed specific instances of the conduct of the city's witnesses, and would have been extrinsic evidence of that conduct. Since the above evidence rule precluded such proof from being admissible, the court properly prevented White from testifying. Consequently, the appellant's first argument under this assignment of error is without merit.

Appellant's second argument under this assignment of error is that he was denied his Sixth Amendment right to confrontation when the court refused to allow White to testify. In order to determine whether the exclusion of evidence violated a defendant's right to effectively confront the witness against him, the state's interest in excluding that evidence must be balanced against the probative value of the evidence. *State* v. *Gardner* (1979), 59 Ohio St. 2d 14, 17, 13 O.O. 3d 8, 10, 391 N.E. 2d 337, 340. The state's interest in excluding extrinsic evidence of a witness' prior conduct is to prevent disputes about matters extraneous to the case at issue. The reason for this policy is that disputes about collateral matters could confuse the jury, waste time, and result in surprise. See *State* v. *Leuin* (1984), 11 Ohio St. 3d 172, 174, 11 OBR 486, 488, 464 N.E. 2d 552, 554, at fn. 3.

The appellant's interest in having White testify was to show bias on the part of the city's witnesses. However, the record is replete with evidence that the city's witnesses were biased against the appellant. Because of this, though White's testimony might have shown bias on the part of the city's witnesses, this testimony would have been merely cumulative to what was already apparent. Therefore, if White would have been permitted to testify, he would have discussed matters collateral to the case even though the probative value of his testimony would have been slight. In light of this analysis, we conclude that the court's interest in excluding extrinsic evidence of these witnesses' prior conduct outweighed the appellant's interest in having White testify about a collateral matter. Consequently, the exclusion of White's testimony did not deny the appellant his Sixth Amendment right to confrontation.

Because of the above, the appellant's fifth assignment of error is overruled.

*Judgment reversed.*

NAHRA, C.J., and MATIA, J., concur.