OPINION
Defendant-appellant Ellen Yaro appeals from her conviction after a bench trial on a charge of disorderly conduct. Appellant asserts the trial court erred in failing to grant her motions for acquittal, arguing the speech that served as the basis for her conviction was constitutionally protected and the complaint against her was fatally defective. This court has reviewed the record, finds the trial court did not properly evaluate the evidence against appellant when considering appellant's motions for acquittal and, therefore, reverses her conviction.
Appellant's conviction stems from an incident that occurred on the evening of March 30, 1998. At approximately 7:00 p.m., appellant's two young daughters, ages eleven and nine, together with a thirteen-year-old friend, were shopping at the Medic Drug Store located on Turney Road in Garfield Heights, Ohio. The girls' presence was noticed by supervisory cashier Dawn Gudat. Gudat recognized the two older girls from a previous incident at the store in which some cosmetics were discovered missing after the girls had spent some time by themselves in the cosmetics aisle. As a result of that incident, the store manager had issued a directive to Gudat that the girls were not permitted in the store unless they were accompanied by an adult.
Gudat did not see an adult with the three girls; therefore, she approached the store's security guard, David DuPont, to apprise him of the store manager's directive. Since DuPont also worked as a police officer for the City of Garfield Heights, he was in uniform. DuPont thereupon went over to the three girls, explained to them the store manager's policy toward them, and informed them they would have to leave. DuPont also requested the girls' names and telephone numbers, which he noted on a pad of writing paper. Moreover, as DuPont was escorting the girls from the store, he asked them if they would open their purses for his visual inspection. The girls cooperated with DuPont.
Approximately forty-five minutes later, the two younger girls returned to the store in the company of their mother, appellant. At that time, Gudat and pharmacist Thaddeus Borkowski each were helping one of the eight to ten customers in the store. Appellant immediately approached DuPont, who stood at the front of the store near the check-out counter. DuPont noticed appellant appeared to be "in an aggravated state"[1] since she was "flushed" and visibly "upset." Appellant seemed highly "offended" by DuPont's earlier interaction with the girls; in a "loud" voice, she demanded of DuPont "why her children were kicked out of the store."
DuPont attempted to explain. Appellant, however, did not permit him to finish; instead, she interrupted with the statement, "This is bullshit." Appellant began "shouting" and "yelling" at DuPont. As appellant's ire increased, she became unable to complete most of her sentences; thus, DuPont "couldn't understand" much of "what she was trying to say to [him]." Appellant, however, did repeat the words "[t]his is bullshit" several times.
DuPont noticed the commotion was attracting the attention of several of the store's customers. Although he attempted to draw appellant outside of the store, his efforts were unavailing; indeed, appellant's volume increased. DuPont told appellant "if she would calm down, she wouldn't be arrested." He also attempted to distract appellant by asking her for some identification; however, appellant refused to cooperate.
At that point, DuPont placed his hand on appellant's elbow as he requested her to move toward the doors. Appellant began flailing at him, "swinging her arms" about and striking DuPont in the chest area with them. DuPont thereupon informed appellant she was under arrest for disorderly conduct. When he placed her in handcuffs, appellant ceased her tirade, "calmed down," and apologized to DuPont.
The record reflects DuPont made a police report of the incident. His report formed the basis of the initial complaint against appellant.[2] Appellant was charged with violation of Section509.03 (a) (2) of the Codified Ordinances of the City of Garfield Heights (hereinafter "G.H. Cod. Ord."), which states as follows:
509.03 DISORDERLY CONDUCT; INTOXICATION.
 (a) No person shall recklessly cause inconvenience, annoyance or alarm to another by doing any of the following:
* * *
 (2) Making unreasonable noise or offensively coarse utterance, gesture or display, or communicating unwarranted and grossly abusive language to any person, which by its very utterance or usage inflicts injury or tends to incite an immediate breach of the peace.
The initial complaint against appellant stated the following:
 Ellen Yaro * * * recklessly alarmed David DuPont by making unreasonable noise, making an offensively coarse utterance or by communicating unwarranted and grossly abusive language to David DuPont.
Appellant entered her appearance on the charge on April 7, 1998. Appellant signed a trial court form that indicated she entered a plea of not guilty to the charge.
On April 20, 1998 appellant filed a motion to dismiss the complaint. Appellant argued in her motion the complaint was defective for three reasons: viz., 1) it failed to allege all the essential elements of the crime; 2) it failed to identify the speech that allegedly constituted the offense; and 3) it was "drawn in the disjunctive."
On April 28, 1998 the trial court held a hearing in the case. In its resulting judgment entry, the trial court stated the city was granted leave to amend the complaint; therefore, appellant's motion to dismiss was overruled. The judgment entry further directed "the city's entire file [was] to be reviewed by defendant in lieu of a bill of particulars.
Nevertheless, on May 12, 1998 the city filed a Bill of Particulars. Therein, the city alleged in pertinent part that on the day of the incident, appellant "was in an agitated state," that she "spoke in loud tones and in fragmented sentences * * * `This is bullshit * * * My daughter is a good girl * * * I have never had problems * * * This is bullshit,'" that appellant "refused" repeated requests to move to a different location, that DuPont noticed several store customers "were alarmed" and that, upon DuPont's touch upon appellant's elbow, appellant "swung her arms," that DuPont narrowly avoided injury by appellant, and that appellant was arrested for violation of G.H. Cod. Ord. 509.03(a) (2).
The city also provided appellant with the amended complaint.[3]
The amended complaint against appellant stated in pertinent part the following:
 Ellen Yaro * * * did recklessly XXXX (sic) communicate unwarranted and grossly abusive language to Patrolman David DuPont, which by its very usage did inflict injury or incited (sic) an immediate breach of the peace.
Appellant responded to the amended complaint with a new motion to dismiss, again arguing it was defective for its failure to allege all of the essential elements of the crime and for its failure to identify the speech that allegedly constituted the offense.
Appellant's case was called for a bench trial on May 26, 1998. The trial court informed appellant her motion to dismiss the charge was overruled; then the city called DuPont as its first witness.
In pertinent part, DuPont testified that the incident seemed to distract the customers but that he was not offended by the context of appellant's words. DuPont further indicated he did not hear appellant threaten him in any way. The matter thereafter was continued to June 10, 1998, when the city also presented the testimony of Dawn Gudat. Gudat essentially corroborated DuPont's testimony but added she heard appellant say, "I will have your badge, you son of a bitch."
Following the trial court's denial of her motion for acquittal, appellant presented the testimony of Cheryl Drab, an acquaintance, who stated she had been in the store during the incident, and Jacqueline Yaro, appellant's eleven-year-old daughter. Appellant also testified in her own behalf. The trial court also permitted appellant to enter into evidence some photographs that she stated had been taken on "March 28 and 29, 1998," which depicted bruises she claimed were inflicted on her arm by DuPont during the incident.
Subsequently, the city presented as rebuttal evidence the testimony of Medic Drug Store Pharmacist Thaddeus Borkowski. Borkowski stated appellant was "ranting and raving" throughout the incident.
The trial court overruled appellant's renewed motion for acquittal, then, on July 15, 1998, issued its judgment entry finding appellant guilty of violation of G.H. Cod. Ord. 509.03(a) (2). In its written opinion, the trial court summarized the testimony of each witness and determined the evidence proved appellant's confrontation with DuPont "consisted of offensively coarse utterances and grossly abusive language directed at the [drugstore's] management and office (sic) DuPont, which by its very utterance tended to and did incite an immediate breach of the peace * * *."
The trial court thereafter sentenced appellant to pay a fine of $100 but stayed appellant's sentence pending the outcome of this appeal.
Appellant presents two assignments of error for review. The first states:
 THE TRIAL COURT ERRED IN DENYING ELLEN YARO'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL WHERE THE EVIDENCE CLEARLY DEMONSTRATED THAT HER SPEECH UPON WHICH THE ENTIRE PROSECUTION RESTED WAS CONSTITUTIONALLY PROTECTED.
Appellant argues the evidence was insufficient to establish her guilt of violation of the portion of G.H. Cod. Ord. 509.03 (a) (2) with which she was charged since the utterances she made to DuPont were not "fighting words" under the standard set forth in Chaplinsky v. New Hampshire (1942), 315 U.S. 568. Appellant's argument is persuasive.
In Toledo v. Grince (1989), 48 Ohio App.3d 126, the court reviewed a conviction for violation of a section of a city ordinance nearly identical to the one in this case. The Grince court reviewed the constitutional standards that must be applied when considering a defendant's motion for acquittal of such a charge thusly:
 While the First Amendment to the United States Constitution creates the right of free speech (which is made applicable to the states and their subdivisions through the Fourteenth Amendment), the exercise of that right is narrowly limited under certain circumstances. One situation, where pure speech can be regulated by criminal statute is where a certain class of speech, now commonly known as "fighting words," is involved. The rationale behind this limitation on the right of free speech is that where words incite an immediate breach of peace, their value as an expression of ideas or truth is outweighed by society's interests in maintaining order and morality. Chaplinsky v. New Hampshire (1942), 315 U.S. 568, 572. Thus, the government can suppress such speech as verbal conduct. Id. at 574. See, also, Cantwell v. Connecticut (1940), 310 U.S. 296, 308; Cohen v. California (1971), 403 U.S. 15; Gooding v. Wilson (1972), 405 U.S. 518; Lewis v. City of New Orleans (1974), 415 U.S. 130; and Cincinnati v. Karlan (1974), 39 Ohio St.2d 107, 68 O.O.2d 62, 314 N.E.2d 162, certiorari denied (1974), 419 U.S. 1056.
 The test for determining what words constitute "fighting words" is whether the words used would reasonably incite the average person to retaliate. Chaplinsky v. New Hampshire, supra,
at 573. The Toledo Municipal Code has codified this standard and requires that the court find that the communication "inflicts injury or tends to incite an immediate breach of the peace." Furthermore, case law requires that the words be used as "fighting words," that is, used to describe a person or be directed at the person. Cohen v. California, supra, at 20; Kent v. Kelly (1975), 44 Ohio St.2d 43, 73 O.O.2d 230, 337 N.E.2d 788.
Id. at 128. (Emphasis added.)
From the foregoing, it is clear that to support a conviction for disorderly conduct based only upon the language used during an incident, as in this case, the prosecution is required to produce evidence that the words spoken were the equivalent of "fighting words." State v. Wylie (1984), 19 Ohio App.3d 180, 182.
This type of language consists of two separate elements. First, the words spoken must be used in a personal manner, i.e., they must be descriptive of a person or intentionally directed at a person. Cincinnati v. Karlan (1974). 39 Ohio St.2d 107; State v.Wylie, supra; South Euclid v. Richardson (1988), 43 Ohio App.3d 114;Toledo v. Grince, supra; State v. Callahan (1989), 48 Ohio App.3d 306;State v. Wood (1996), 112 Ohio App.3d 621.
Second, the words must be of a type that would cause harm.South Euclid v. Richardson, supra; State v. Miller (1996),110 Ohio App.3d 159; State v. Dickey (1991),75 Ohio App.3d 628; Cleveland v. Wronko (May 14, 1987), Cuyahoga App. No. 52132, unreported; State v. Schiesswohl
(June 3, 1982), Cuyahoga App. No. 44196, unreported.
A review of the evidence in this case reveals appellant's language did not constitute a violation of G.H. Cod. Ord. 509.03 (a) (2). DuPont testified he heard appellant utter no remarks that were personally directed either at him or at the store; rather, appellant's statements were directed at the situation.
Moreover, none of the witnesses indicated appellant's words were of the intensity required to either injure or incite others. DuPont was not personally offended, and the store customers merely stopped to observe the confrontation.
Thus, since the evidence was insufficient to establish appellant used "fighting words" in her confrontation with DuPont, there was no basis for her conviction for violation of the portion of G.H. Cod. Ord. 509.03 (a) (2) with which she was charged. Statev. Wylie, supra; South Euclid v. Richardson, supra.
The trial court therefore erred when it denied appellant's motion for acquittal of the charge.
Accordingly, appellant's first assignment of error is sustained.
In view of this court's disposition of appellant's first assignment of error, appellant's second assignment of error[4] is rendered moot. App.R. 12 (A) (1) (e).
Appellant's conviction is reversed, and appellant is discharged.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee her costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J. and JOHN T. PATTON, J. CONCUR.
 ____________________________ JUDGE KENNETH A. ROCCO
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] The record reflects that although appellant was served with a copy of the complaint on March 30, 1998, the complaint was not filed in the trial court until April 10, 1998.
[3] The amended complaint ultimately was filed in the trial court on August 20, 1998.
[4] Appellant's second assignment of error states:
 THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS WHERE THE COMPLAINT AGAINST HER FAILED TO STATE AN OFFENSE PURSUANT TO CRIM.R. 7 (B) AND CONSEQUENTLY FAILED TO SATISFY THE NOTICE REQUIREMENT OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION.