[Cite as *State v. Harris*, 2025-Ohio-2796.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,          :        APPEAL NO. C-240342
TRIAL NOS. C/24/CRB/389/A/B/C

      Plaintiff-Appellee,        :

  vs.                         :

KEESHA HARRIS,         :
                                      *JUDGMENT ENTRY*

      Defendant-Appellant.     :


This cause was heard upon the appeal, the record, and the briefs.

The judgments of the trial court are affirmed in part and reversed and appellant discharged in part for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed 50% to appellee and 50% to appellant.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 8/8/2025 per order of the court.**


**By:**_____
      **Administrative Judge**

[Cite as *State v. Harris*, 2025-Ohio-2796.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240342 |
|  |  | TRIAL NOS. C/24/CRB/389/A/B/C |
| Plaintiff-Appellee, | : |  |
|  |  |  |
| vs. | : |  |
|  |  | *O P I N I O N* |
| KEESHA HARRIS, | : |  |
|  |  |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in Part, Reversed and Appellant Discharged in Part

Date of Judgment Entry on Appeal: August 8, 2025

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1} Following a jury trial, Keesha Harris appeals her convictions for failure to comply with an officer's order, disorderly conduct, and obstructing official business. In three assignments of error, Harris argues that the trial court erred in denying her Crim.R. 29(A) motion for acquittal, the court erred by incorrectly instructing the jury on failure to comply, and her convictions were based on insufficient evidence and were contrary to the manifest weight of the evidence. For the following reasons, we affirm the judgments of the trial court in part, reverse the judgments in part, and discharge Harris from further prosecution for disorderly conduct and obstruction of official business.

### Factual and Procedural History

{¶2} Keesha Harris was charged with failure to comply with an officer's order in violation of R.C. 2921.331(A), disorderly conduct, and obstructing official business ("OOB") after an encounter with a patrol officer who was conducting a traffic stop of an unknown vehicle, and an officer who responded to the scene. Harris pleaded not guilty and proceeded to a jury trial.

{¶3} The State's first witness was a patrol officer employed by Springfield Township. The patrol officer testified that he was conducting a traffic stop when he first encountered Harris. As he was speaking with the driver he had pulled over for a traffic violation, Harris pulled up parallel to the stop, and the officer asked her to move, either to the side of the road or away from the scene. The patrol officer testified that Harris responded by saying, "I can do what I want, and I don't have to listen to you." The officer estimated that Harris was next to the traffic stop for 30 seconds. When Harris refused to move her car, the patrol officer requested more officers to respond and continued processing the traffic stop.

{¶4} The patrol officer testified that as Harris "cleared the roadway," other officers arrived. After Harris had pulled over, the other officers approached her, and he could hear loud talking. The patrol officer testified that Harris inconvenienced him and delayed his traffic stop for "probably a total of five minutes."

{¶5} On cross-examination, the patrol officer confirmed that Harris moved her vehicle forward approximately 40 feet and parked in the far-right lane. At that time of the evening, she could legally park in that lane.

{¶6} The next witness was a fellow Springfield Township officer who responded to the call for assistance. The responding officer testified that as he arrived on the scene, he saw a car stopped in the left lane parallel to the car in the right lane that the patrol officer had pulled over. The responding officer parked behind the patrol officer's cruiser and observed the patrol officer motion to Harris to move forward. The responding officer estimated that he arrived 90 seconds after receiving the initial request for assistance, and that Harris remained in the lane of traffic for about 90 seconds. Harris eventually moved out of the lane of traffic after an exchange with the patrol officer.

{¶7} After Harris parked, the responding officer observed Harris while she exited from her vehicle and stood halfway between her vehicle and the traffic stop for about a minute. When he heard Harris shouting profanities, he intended to approach her and let her know she could film the police stop but not while standing in the middle of the road. He was unable to convey that message to her because the yelling continued. Harris continued to stand in the road until a small child exited from her car. The child approached Harris and asked her to return to the car.

{¶8} While Harris was shouting, the responding officer noticed lights coming on in the surrounding homes and people standing at their doors watching the traffic

4

stop. The responding officer estimated that the homes were about 80 feet from the road. After he saw the child exit from the passenger seat, he made the decision to approach her and investigate the child potentially riding in the vehicle unrestrained and Harris's filming from the middle of the road.

**{¶9}** As the responding officer approached Harris, she retreated and tried to enter her driver's side door. The officer commanded her to stand on the sidewalk so he could investigate the "traffic violations" that he observed. The officer further testified that he asked Harris to step onto the sidewalk six to eight times and explained to her that she was not free to leave and must interact with him. Harris opened the car door and started to enter her vehicle when a "tugging match" occurred. The officer grabbed Harris because her conduct was disorderly, and he believed that she was attempting to flee. During the arrest, Harris fell to the ground during a physical altercation with the responding officer.

**{¶10}** When Harris initially exited from her vehicle, she was holding a phone in front of her as she shouted profanities, and the responding officer assumed she was recording. Harris was holding the phone throughout the encounter. The officer estimated that two to three minutes had elapsed from his arrival to Harris's arrest.

**{¶11}** The responding officer was shown a video taken by Harris that captured part of the interaction that he had with her. At the end of the video, the officer is depicted making contact with Harris. The responding officer can be heard saying, "Come over to the sidewalk." Harris responded, "I ain't did nothing." The officer replied "yeah, you did," and told her that the child was not in a car seat. Between six and eight seconds after telling her to come to the sidewalk, the officer grabbed her. At this point, Harris was no longer filming and she did not try to lunge at or strike the officer.

**{¶12}** After the responding officer's testimony, the State rested and Harris moved for a judgment of acquittal under Crim.R. 29. Harris argued that to secure a conviction for failure to comply, the State was required to prove that the officer's order involved an act or omission in operating her motor vehicle, and Harris was not in her vehicle at the time of the order. With respect to the disorderly-conduct charge, Harris contended that the State failed to prove that her conduct recklessly caused another inconvenience, annoyance or alarm. Harris sought an acquittal on the obstructing-official-business charge because "[t]here was no testimony regarding any affirmative act by Ms. Harris that resulted in this charge." After reviewing the complaints, the trial court overruled the motion.

**{¶13}** The trial proceeded, and Harris testified on her behalf. Harris testified that she was at a red light and observed a police cruiser stop a vehicle. When the light turned green, Harris turned and the driver of the car looked at her in a way that alarmed her, so she pulled over to watch the traffic stop. Harris testified that she slowed down when passing the vehicle but did not stop on the road. Harris again testified that she was not asked to move by the patrol officer. Harris pulled over in the parking lane and observed the car involved in the traffic stop and two police cruisers parked behind her car. After she parked, Harris tried to observe the traffic stop from her car mirrors but could not see what was happening because the officer was not standing at the driver's side of the vehicle.

**{¶14}** Harris exited from her car and walked to the back of her car. At that moment, an officer said something to her, and she began to record the exchange. The officer told her "you need to get out of here." Harris started moving slowly back to her car and responded with profanities and other comments as heard on the video. The responding officer began walking toward her and grabbed her, smacked the phone

6

from her hand, and threw her on the ground. Harris testified that she never entered her car or attempted to close the driver's door on the officer.

{¶15} After Harris's testimony, both parties rested. The court instructed the jurors that to find Harris guilty of failure to comply with an order or signal of a police officer, the jury must find "[t]he defendant operated a motor vehicle so as to willfully elude or flee a police officer after receiving a visible or audible signal from a police officer to bring their motor vehicle to a stop." Although no one objected to the instruction, the instruction the court gave was for a violation of R.C. 2921.331(B), which states, "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Harris was charged with violating R.C. 2921.331(A), which provides, "No person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic." The jury returned with guilty verdicts on all three counts.

### Motions for Acquittal

{¶16} In her first assignment of error, Harris contends that the trial court erred in denying the Crim.R. 29(A) motions for acquittal by improperly relying on the complaints to overrule the Crim.R. 29(A) motions for acquittal, when the evidence presented in the State's case-in-chief was insufficient to prove the offenses.

{¶17} A trial court's ruling on a Crim.R. 29 motion is reviewed under the standard that applies to a review for sufficiency of the evidence. *State v. Wynn*, 2017-Ohio-8045, ¶ 7 (1st Dist.); *State v. Kennard*, 2022-Ohio-2055, ¶ 17 (2d Dist.). Where a defendant challenges the denial of a Crim.R. 29(A) motion made at the conclusion of the State's case-in-chief, however, our review is limited to the evidence then available to the trial court. *State v. Bailey*, 2017-Ohio-2679, ¶ 17 (2d Dist.).

7

**{¶18}** Under Crim.R. 29(A), a trial court is required to construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions about whether the evidence proves each element of the offense charged beyond a reasonable doubt. *State v. Miller*, 2010-Ohio-5532, ¶ 12 (12th Dist.), citing *State v. Bridgeman*, 55 Ohio St.2d 261, 263 (1978). A reviewing court must determine whether any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Ham*, 2017-Ohio-9189, ¶ 19 (1st Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶19}** Harris argues the trial court erred in denying her Crim.R. 29 motion at the close of the State's case-in-chief because the court did not review whether the evidence was sufficient to prove the offenses and instead relied on the allegations contained in the complaint.

### Failure to Comply

**{¶20}** Harris was charged under R.C. 2921.331(A) which provides, "No person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic." "A person is guilty of failure to comply, if, after receiving a lawful order from a police officer invested with authority to direct, control, or regulate traffic, that person failed to comply with that order." *State v. Wagenknecht*, 1994 Ohio App. LEXIS 2962, *5 (9th Dist. June 29, 1994).

**{¶21}** The State argues that the offense occurred when the patrol officer ordered Harris to move her vehicle while stopped parallel to the traffic investigation. The patrol officer testified that he asked Harris to move to the side of the road when she stopped next to the traffic investigation. Harris responded that she could do what she wanted and did not need to listen to the officer. According to the patrol officer's

8

testimony, Harris inconvenienced him and delayed the traffic stop for "probably a total of five minutes." The responding officer testified that he saw Harris's car stopped in the left lane parallel to the car in the right lane that the patrol officer had pulled over and observed the patrol officer gesture to Harris to move forward. The responding officer estimated that he arrived 90 seconds after receiving the initial request for assistance, and that Harris remained in the lane of traffic for about 90 seconds.

{¶22} Harris contends that she complied with the order to move her vehicle, and therefore, the State failed to prove that she did not comply with the order.

{¶23} Viewing the evidence most favorably to the State, Harris stopped her car in a lane of travel to observe a traffic incident. The patrol officer ordered her to move to the side of the road or away from the scene. Instead of complying, Harris informed the patrol officer that, "I can do what I want, and I don't have to listen to you." Harris remained in the lane of traffic from 30-90 seconds before moving her vehicle. Thus, the State produced sufficient evidence to allow the jury to find the elements of failure to comply beyond a reasonable doubt.

## Disorderly Conduct

{¶24} Harris was charged with persistent disorderly conduct for recklessly causing inconvenience to the neighbors by engaging in turbulent behavior and persisting in the conduct after a reasonable warning or request to desist. Harris contends that there was no testimony by any neighbor who claimed to have been annoyed or inconvenienced. Harris further argues that the neighbors may have been watching the incident because police cars were in front of their homes.

{¶25} The responding officer testified that Harris was standing in the parking lane shouting profanities for up to a minute. While Harris was yelling, the officer observed people watching the incident from their homes and lights coming on in the

neighboring homes.

{¶26} Notably, there was no testimony from any of the neighbors that they were annoyed or inconvenienced, and neither officer testified that the neighbors complained of the noise. *See State v. Smith*, 2002-Ohio-5994, ¶ 14-19 (2d Dist.) (holding that the evidence was insufficient to prove disorderly conduct where "the prosecution failed to show that Smith recklessly caused another inconvenience, annoyance, or alarm based upon his yelling."); *State v. Holmes*, 129 Ohio App.3d 735 (2d Dist. 1998) (holding that the fact other people may have heard an individual's use of profanity directed at a police officer is insufficient to show that the people were inconvenienced, alarmed, or annoyed when none of them testified that they were, in fact, inconvenienced, alarmed, or annoyed); *City of Eastlake v. Kirkpatrick*, 2007-Ohio-6945, ¶ 17 (11th Dist.) (holding that there was no evidence that defendant's use of profanity directed at a police officer inconvenienced the bystanders in the neighboring properties where none of the neighbors testified).

{¶27} Accordingly, after reviewing the record and considering the evidence in a light most favorable to the prosecution, we conclude that the State did not present sufficient evidence to prove beyond a reasonable doubt that Harris caused inconvenience to the neighbors by shouting profanities.

### Obstructing Official Business

{¶28} Next, Harris argues that the conviction for OOB was not supported by sufficient evidence because the failure to comply with an order to get on the sidewalk was not an affirmative act and the officer was not impeded by her conduct. However, the complaint alleged that the basis of the charge was that "Keesha enter[ed] her vehicle and attempt[ed] to shut the door on arresting officers after being advised she was under arrest. Defendant then refused to give her hands to officers to be

handcuffed. A struggle occurred to a point that Keesha was taken to the ground."

{¶29} To support a conviction for OOB, the State must prove that Harris "(1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties." *In re Payne*, 2005-Ohio-4849, ¶ 11 (1st Dist.). To prove OOB, "[t]here must be some substantial stoppage of the officer's progress before one can say [he] was hampered or impeded." *State v. Buttram*, 2020-Ohio-2709, ¶ 20 (1st Dist.), citing *State v. Stephens*, 57 Ohio App.2d 229, 230 (1st Dist. 1978).

{¶30} The responding officer testified that he decided to approach Harris after the child exited from her vehicle. As he approached, Harris retreated and tried to reenter her vehicle. The officer further testified that he informed Harris that she was not free to leave, and Harris started to open the car door and started to get back into the car as he repeatedly told her to exit from the car. The responding officer did not testify that Harris tried to close the door on him or that she refused to give him her hands to be handcuffed.

{¶31} The video clip of the encounter captured by Harris depicts Harris yelling at the officers while they are standing next to the stopped vehicle. At the beginning of the video, Harris is standing between her car and the traffic stop, walking backwards toward her driver's door. As two officers begin to approach her, Harris continued to yell. While Harris was standing by the rear passenger door, the responding officer asked her to get on the sidewalk. Within six to eight seconds of asking Harris to come to the sidewalk, the officer reached out to grab her, and the video ended. The video did not show Harris enter her vehicle. Harris was next to the car when the responding officer reached for her.

**{¶32}** The responding officer did not testify that Harris's conduct impeded or hampered his investigation. Although there was a six-to-eight second delay between the time that Harris was asked to move to the sidewalk and the time the officer grabbed her, the State failed to show that this brief delay hampered or impeded the investigation.

**{¶33}** Without evidence of "hampering" or "impeding," the State failed to show that Harris hampered or impeded the officers' child-restraint investigation. *See State v. Coffman*, 2024-Ohio-1182, ¶ 29 (1st Dist.) (holding that "without evidence of 'hampering' or 'impeding' beyond that 20-second delay in apprehending Coffman, the state failed to show that Coffman hampered or impeded the officers' breaking-and-entering investigation"); *In re R.B.*, 2021-Ohio-3749, ¶ 24-25 (1st Dist.) (holding that the evidence was insufficient to support the OOB conviction where the juvenile's conduct "in closing the back door and momentarily retreating from the back room did not cause any substantial stoppage of Officer Herring's progress in securing the house"). Thus, the State failed to prove beyond a reasonable doubt that Harris obstructed the officer in the performance of his duties.

**{¶34}** Accordingly, we overrule the first assignment of error with respect to the failure-to-comply conviction and sustain the assignment of error with respect to the disorderly-conduct and OOB convictions.

### Jury Instructions

**{¶35}** Next Harris contends that the trial court improperly instructed the jury on the elements of R.C. 2921.331(B) when she was charged with violating R.C. 2921.331(A).

**{¶36}** Harris failed to object to the incorrect instruction, so we review for plain error. *See State v. Adams*, 62 Ohio St.2d 151, 153 (1980) (explaining that the failure

to object to a jury instruction results in a plain-error review). "A trial court's failure to charge the jury on every element of each crime with which a defendant is charged does not per se constitute plain error nor does it necessarily require reversal of a conviction." *Id.* at 154. An appellate court must review the record to determine "whether substantial prejudice may have been visited on the defendant, thereby resulting in a manifest miscarriage of justice." *Id.*

**{¶37}** In this case, there is no dispute that the court improperly instructed the jury on the elements of R.C. 2921.331(B). The State contends that Harris did not establish that she was prejudiced by the error. We agree. Harris did not contend or establish that she was prejudiced by the incorrect instruction.

**{¶38}** Accordingly, we overrule the second assignment of error.

### Manifest Weight

**{¶39}** Next, Harris argues that her convictions were against the manifest weight of the evidence. Because we have determined that the convictions for disorderly conduct and OOB were not supported by sufficient evidence, we examine the manifest weight of the evidence in support of the failure-to-comply conviction.

**{¶40}** When considering a weight-of-the-evidence claim, we review "'the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Bailey*, 2015-Ohio-2997, ¶ 59 (1st Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380 (1997). We afford substantial deference to credibility determinations because the factfinder sees and hears the witnesses. *See State v. Glover*, 2019-Ohio-5211, ¶ 30 (1st Dist.).

**{¶41}** Although Harris testified that she never stopped her car next to the traffic stop and was not asked to move by the patrol officer, the jury was in the best position to observe the witnesses and to determine the credibility of the witnesses. We cannot conclude that the jury's credibility determinations were unreasonable or that the jury lost its way and created a manifest miscarriage of justice.

**{¶42}** We overrule the third assignment of error.

### Conclusion

**{¶43}** Having sustained Harris's first assignment of error in part, we reverse the judgments in part and discharge Harris from further prosecution on the disorderly-conduct and OOB charges. We affirm the judgment of the trial court with respect to the conviction for failure to comply.

Judgments affirmed in part, and reversed and appellant discharged in part.

**KINSLEY, P.J.,** and **BOCK, J**., concur.