# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250221 |
| | | TRIAL NO. | 24/CRB/18974 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| EVENNA STARR, | : | *JUDGMENT ENTRY* | |
| Defendant-Appellant. | : | | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is reversed and appellant is discharged.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 2/20/2026 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *State v. Starr*, 2026-Ohio-587.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250221 |
| | | TRIAL NO. | 24/CRB/18974 |
| Plaintiff-Appellee, | : | | |
| vs. | : | *O P I N I O N* | |
| EVENNA STARR, | : | | |
| Defendant-Appellant. | : | | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: February 20, 2026


*Emily Smart Woerner*, City Solicitor, *William T. Horsley,* Chief Prosecuting Attorney, and *Robert E. Rickey,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

**{¶1}** Evenna Starr appeals her conviction, after a bench trial, for persistent disorderly conduct. In one assignment of error, Starr argues that the conviction was based on insufficient evidence and was against the manifest weight of the evidence. For the following reasons, we reverse the judgment of the trial court and discharge Starr from further prosecution.

## Factual Background

**{¶2}** Evenna Starr was charged with disorderly conduct in violation of R.C. 2917(A)(3), as a misdemeanor of the fourth degree. According to the complaint, Starr recklessly caused "inconvenience" to another by "insulting, taunting or challenging another, under circumstances in which that conduct is likely to provoke a violent response." The basis of the complaint was "police observed Ms. Starr acted disorderly, yelling loudly and causing alarm at Ward St."

**{¶3}** Starr proceeded to a bench trial. The State's sole witness was a Cincinnati Police Department ("CPD") patrol officer. The patrol officer testified that he and three other officers responded to a call for service in Madisonville. When he arrived, other officers were already on the scene, and Starr was outside looking for her son. Starr told the officers that her son was in the house across the street, and the officers offered to help and to check on her son. The officer testified that they did not have probable cause to enter the home, but the officers could knock on the door to see if Starr's son was there. The officer testified that he went into the home and spoke with the occupants of the home.[1]

**{¶4}** The prosecutor then asked him about Starr's demeanor upon his arrival.

---

[1] After reviewing his body-worn-camera video, the officer corrected this testimony and stated that he did not enter the home.

The officer testified that Starr was very emotional and looked as if she were going to mentally break down. Starr was yelling because she wanted her son. The officer rated her volume as ten out of ten. When asked what Starr was yelling, the officer responded, "She demanded us to go inside the house and take her son." The officer explained that he spoke with the occupants of the house who told him that Starr's son was not there. The officer further explained that Starr had called the police for the same thing the previous night, and her son was not there. The patrol officer had not responded the previous night.

{¶5} While he was speaking with the occupants of the home, Starr was still outside yelling. Starr "was talking, saying about her son is still inside the house, and they have to do something, and stuff like that." Starr also requested a supervisor. The officer testified that Starr never calmed down, and she was taken to jail. As the officers transported her to jail, she continued to yell and insult him the entire time. When asked what specific words Starr uttered, the officer responded, "She just insulted me the whole time."

{¶6} On cross-examination, the officer confirmed that Starr had called 9-1-1 because her son was missing. The officer was questioned about a Cincinnati Public School ("CPS") laptop that Starr explained was tracked to the neighbor's residence. At first, the officer did not recall Starr mentioning a CPS laptop but then remembered that Starr had told him that she had tracked her son's CPS laptop to the neighbor's home.

{¶7} The officer recounted going to the neighbor's porch with a CPD supervisor and two other officers. When the officer opened the door to the home, he saw people inside and an upset woman. The woman was very upset and yelling at him and Starr. The officer testified that the woman never left her home the entire time.

4

{¶8} Initially, Starr stood in the side yard then moved to public property, then across the street when asked to move. The officer testified that Starr was asked to move many times. When Starr was arrested, she was on the sidewalk approximately 35 feet from the neighbor's door. The officers were on the scene for 40 minutes or more, and during that time, three or four neighbors exited from their homes "after we tell her that she has to go" and "when she started to yell outside." The officer testified that he never punched or hit Starr and was never on the verge of hitting her.

{¶9} The officer's body-worn-camera ("BWC") video showed that the woman in the neighboring house did not leave her doorway. The woman shouted at Starr, who was standing at a distance, and called her a bitch. Starr shouted back about calling 241-KIDS. A supervising officer spoke with the neighbor woman. As the supervising officer began to leave the porch, the woman said, "Get her off of my property." Starr was visible, standing on the road.

{¶10} The supervising officer approached Starr and informed her to stay off the property. Starr was still in the street, and told him to do his job. When Starr said, "You're not going to talk to me," the supervising officer told her to go across the street. As she turned to cross the street, Starr said, "Fuck you, fat bitch," and "fat, ass bitch." The supervisor did not respond to her comments and reminded her not to go on the neighbor's property. The officers turned and walked away.

{¶11} Then the officers, including the supervising officer, spoke together next to the cruisers, and one said, "So, what's going to happen?" Starr approached them and asked, "So what are you all doing?" A third officer responded, "We're talking." The officers walked away from her and told her not to follow them. Then the video abruptly ended.

{¶12} The trial court found her guilty.

{¶13} Starr now appeals, and in one assignment of error, she contends the conviction was not supported by sufficient evidence and against the manifest weight of the evidence because the State failed to prove the specific words she uttered or that her words were likely to provoke a violent response.

### Sufficiency of the Evidence

{¶14} In a challenge to the sufficiency of the evidence, "the question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found all the essential elements of the crime proved beyond a reasonable doubt." *State v. Ham*, 2017-Ohio-9189, ¶ 19 (1st Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991), paragraph two of the syllabus.

{¶15} In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶16} Starr was convicted of disorderly conduct in violation of R.C. 2917.11(A)(3), which states, "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by . . . [i]nsulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response." "Ohio courts have interpreted R.C. 2917.11(A)(3) as prohibiting both the offender's use of 'fighting words' and/or conduct likely to 'provoke a violent response.'" *State v. Gibson*, 2023-Ohio-2022, ¶ 13 (3d Dist.), citing *State v. Schils*, 2020-Ohio-2883, ¶ 19 (12th Dist.). Thus, the State was required to prove that Starr used "fighting words" or exhibited conduct "likely to provoke a violent response" which caused inconvenience to another. *See id.*; R.C. 2917.11(A)(3).

6

**{¶17}** Starr was charged with a fourth-degree misdemeanor. Under R.C. 2917.11(E)(3)(c), disorderly conduct is a misdemeanor of the fourth degree if the offense is committed in the presence of a law enforcement officer. Starr's conviction was based on causing inconvenience to the supervising officer by insulting, taunting, or challenging him by saying, "Fuck you, fat bitch," and "fat, ass bitch." The video shows Starr making those statements, and also shows the supervising officer ignoring the statements and walking away. The State was required to prove those were "fighting words" that inconvenienced the supervising officer.

**{¶18}** "[N]o matter how rude, abusive, offensive, derisive, vulgar, insulting, crude, profane or opprobrious spoken words may seem to be, their utterance may not be made a crime unless they are fighting words . . ." *Cincinnati v. Karlan*, 39 Ohio St.2d 107, 110 (1974). "[S]omething more than mere profanity is required to constitute fighting words." *Gibson*, 2023-Ohio-2202, at ¶ 15 (3d Dist.), citing *State v. Harvey*, 2020-Ohio-329, ¶ 17 (3d Dist.), quoting *City of Chillicothe v. Lowery*, 1998 Ohio App. LEXIS 3336 (4th Dist. July 13, 1998).

**{¶19}** Although "a person need not actually be provoked to a violent response" for words to be "fighting words," the failure of the targeted party to respond might evidence that the words were not "fighting words." *State v. Blair*, 2012-Ohio-1847, ¶ 9 (2d Dist.); see *Cohen v. California*, 403 U.S. 15, 20 (1971) (no "fighting words" where there was "no showing that anyone who saw Cohen was in fact violently aroused or that [he] intended such a result"); *Wood v. Eubanks*, 25 F.4th 414, 425 (6th Cir. 2022) (concluding that the speaker's insults were not "fighting words" in part because the targets of the insults did not react with violence or view the insults as an invitation to fight); *State v. Richardson*, 43 Ohio App.3d 114, 116 (8th Dist. 1988) (concluding that words were not "fighting words" in part because no one who heard the defendant's

7

remarks responded to them).

**{¶20}** When a police officer is the offended party, there is a distinction between the mere use of profane language in the presence of the police officer and when the language is directed to the officer personally. *State v. Harvey* at ¶ 17, citing *State v. Wood*, 112 Ohio App.3d 621, 628 (11th Dist. 1996). "Ohio consistently cautions that law enforcement officers must have a thicker skin than the public as a whole." *State v. Beamer*, 2012-Ohio-2222, ¶ 18 (5th Dist.). Generally, "something more than insulting language or a persistent, belligerent manner is required to sustain a conviction for disorderly conduct." *State v. Richardson*, 43 Ohio App.3d 114, 115-116 (8th Dist. 1988).

**{¶21}** "In determining whether profane utterances constitute fighting words, courts have considered whether the conduct accompanying these statements is hostile or threatening." *Harvey*, 2020-Ohio-329, at ¶ 18 (3d Dist.); *Gibson*, 2023-Ohio-2202, at ¶ 16 (3d Dist.) ("[W]e do not find the simple act of calling someone a 'redheaded bitch' would have provoked immediate retaliation."); *Lowery*, 1998 Ohio App. LEXIS 3336, at *1 (saying "fuck you" to police officers and repeatedly calling them "motherfuckers" did not constitute "fighting words"); *State v. Rossiter*, 1997 Ohio App. LEXIS 1251, *9 (4th Dist. Mar. 26, 1997) (finding statements were fighting words because the "appellant combined his words with actions when he swung at" a police officer); *City of Shaker Hts. v. Marcus*, 1993 Ohio App. LEXIS 574, *3 (8th Dist Feb. 4, 1993) (considering the defendant's "words . . . in the context of [his] actions" that included "getting in [the police officer's] face and slamming his fist upon [a] desk."); *Woodmere v. Workman*, 2022-Ohio-71, ¶ 24 (8th Dist.) (vacating disorderly-conduct conviction that was based entirely on defendant's verbal criticism and expletives to the police officer).

**{¶22}** Here, Starr uttered profanity and insults to the supervising officer. At the time Starr made the statements, she was complying with the officer's directive to cross the street. Starr's words were not accompanied by any conduct that could be construed as hostile or threatening. Notably, the complaint is based on her words and contains no conduct that could be construed as threatening. As Starr made the statements, she had turned away from the officer while walking across the street. The supervising officer ignored her comments and turned and walked away from her. Based on this evidence, the State failed to prove that Starr's profane insults constituted "fighting words." *See Lowery* at *1; *Workman* at ¶ 24.

**{¶23}** Moreover, there was no evidence that the supervising officer was annoyed, inconvenienced, or alarmed by her words or felt threatened or that her words were likely to provoke a violent response. *See, e.g., State v. Harris*, 2025-Ohio-2796, ¶ 26 (1st Dist.) (vacating disorderly-conduct conviction where there was no testimony from any of the neighbors that they were annoyed or inconvenienced); *State v. Smith*, 2002-Ohio-5994, ¶ 15 (2d Dist.) (holding that "the prosecution failed to show that Smith recklessly caused another inconvenience, annoyance, or alarm based upon his yelling" where none of the officers testified that they felt inconvenienced, annoyed, or alarmed). The video depicts the supervising officer ignoring Starr's insults and turning and walking away, and he did not testify at trial.

**{¶24}** Here, the State presented insufficient evidence to establish that Starr inconvenienced, alarmed, or annoyed the supervisor with her profane insults or that the insults constituted "fighting words" likely to provoke a violent response.

**{¶25}** The State contends that Starr's fighting words could have been directed at the occupants of the home or the neighbors on the street. However, the State does not identify any specific words Starr directed to the occupants or neighbors that could

constitute fighting words and presented no evidence or testimony to support this theory.

{¶26}  Accordingly, we sustain Starr's assignment of error.

## Conclusion

{¶27}  Having sustained Starr's sole assignment of error, we reverse the judgment of the trial court and discharge Starr from further prosecution.

Judgment reversed and appellant discharged.

CROUSE and BOCK, JJ., concur.